HENRY W. ALLEN *vs.* JOSHUA S. INGALLS.

Suffolk.   March 13, 1899. — April 1, 1899.

Present: HOLMES, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Contract — " First Profits."*

Where, A. having conveyed certain property to B., B. stipulates in writing to make certain payments to A. " out of the first profits " of the business, in the absence of anything to the contrary in the written agreement, "profits " have reference to the whole term of B.'s management, so far at least as to require that the previous losses must be first extinguished.

CONTRACT, upon the following written agreement: " Detroit, Mich., May 25, 1887.   In consideration of a certain conveyance to me of real estate and chattels in the town of Troy, Ohio, used in connection with the business of manufacturing polished sheet steel I have undertaken, for which I have made a cash payment of $8,000, and whereas the said sum does not cover the investment of money heretofore made by H. W. Allen & Co. therein and in connection with said business the following further consideration by way of conditional agreement is entered into and made a part of the purchase price thereof.   If under my management, ownership, or control the said business shall be brought to a profitable and remunerative condition, out of the first profits thereof accruing to me and equal in amount to the said sum, I promise and undertake to pay to H. W. Allen & Co. the further sum of $3,113$\frac{58}{100}$, and also the taxes for 1887, not now ascertainable, without interest thereon until it shall have as aforesaid

been realized to me as a profit from said business.  Joshua S. Ingalls.  May 25, 1887."

At the trial in the Superior Court, before *Sheldon*, J., it appeared that the taxes referred to in the agreement for 1887 were afterwards paid by the plaintiff, and amounted to $38.06, making a total of the two items which the defendant undertook conditionally to pay, $3,151.64; that the defendant took possession of the manufacturing plant and carried on the business until January 1, 1894, when he sold it out; that from 1887 to 1891 inclusive the defendant put into the business the sum of $39,764.08; that this was carried on the books as a capital account, and interest credited thereon to the defendant; and that he was also credited on July 1, 1892, with $2,863.95, profits of the business for the first half of the year.  But it did not appear what became of the profits subsequently made according to the profit and loss account.

The judge found that the expenses or disbursements exceeded the receipts for the period from May 25, 1887, through 1890, by $12,110.69, and that the receipts exceeded the expenses for the years 1891 to 1893 by $9,054.64.

The judge found as facts:

" 1. That the business was brought to a profitable and remunerative condition in the year 1891; and 2. That in the year 1892 the defendant realized profits exceeding the sum claimed in the plaintiff's declaration, but not sufficient to make up his previous losses."

The plaintiff requested the judge to rule as follows:

" ' First profits,' within the meaning of the contract sued on, is not to be construed as meaning *net* profits, or profits remaining after the payment of all losses, if any, previously made, but is to be taken to mean the first excess of receipts over expenditures in the business."

The judge declined so to rule, and the plaintiff excepted.

At the defendant's request the judge gave the following ruling:

" In determining whether or not there were profits to the amount of $3,151.64 while the business was under the ownership, management, or control of the defendant, the whole period of such ownership, management, or control is to be considered, and no particular portion thereof independently of the whole period."

To this ruling the plaintiff excepted.

The judge ruled that the plaintiff was not entitled to recover; and the plaintiff alleged exceptions.

*G. W. Anderson*, for the plaintiff.

*B. E. Kemp*, for the defendant.

HAMMOND, J. This case presents a very narrow question as to the construction of that part of the contract which relates to the payment by the defendant to the plaintiff of profits accruing to the defendant.

The plaintiff contends that the meaning of the contract is that, no matter how great the losses of the defendant were in the first part of his management of the business, as soon as there came a period of time within the term of the management when, taking the business for that period by itself, there were profits, such profits accrued to the defendant within the meaning of the contract, and were payable to the plaintiff thereunder to the amount therein named, even although they were insufficient to offset the defendant's previous losses.

The defendant contends that the question of profits has reference to the whole term of his management, so far at least as to require that the previous losses must be first extinguished.

The court ruled substantially in accordance with the defendant's contention, and we think the ruling was correct.

The defendant was willing to pay $8,000 in cash for the property, and if he made anything out of the business he was willing the plaintiff should have the first profits to a certain amount. But so long as the account of the business under his management showed a loss, there were no profits accruing to the defendant. The construction contended for by the plaintiff would require the defendant to pay to him money as profits when during the term of his management the defendant had never seen the time when that management on the whole showed any profits accruing to him.

This does not seem to us a natural and reasonable construction of the language of the contract.

*Exceptions overruled.*